

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

KTF:BGD
F. #2026R00067

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 27, 2026

<u>By E-mail and ECF</u>

The Honorable Diane Gujarati
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: <u>United States v. Jon Consiglio</u>
     <u>Criminal Case No. 26-28 (DG)</u>

Dear Judge Gujarati:

  The government respectfully submits this letter in opposition to the defendant's February 24, 2026 bail application. ECF No. 11 (the "Bail App."). On January 28, 2026, the Honorable Taryn A. Merkyl, United States Magistrate Judge, entered a permanent order of detention as to the defendant, relying on findings that the charged crimes involved a minor victim, the weight of the evidence is strong, and the defendant is subject to a lengthy period of incarceration if convicted. <u>See</u> ECF No. 2. The defendant now requests that he be released on a bond secured by his mother and wife, with eight release conditions. Bail App. at 1-2. For the reasons set forth below, the defendant's request should be denied as there is no condition or combination of conditions that would ensure the safety of the community and reasonably assure the defendant's appearance in court.

 I. <u>Background</u>

  The defendant was arrested on January 28, 2026, after being charged by criminal complaint with sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a). <u>See</u> ECF No. 1. As the complaint sets out, in January 2026, law enforcement officers received a report from an acquaintance of the defendant that a phone previously owned by the defendant contained child sexual abuse material (hereinafter "CSAM"). <u>Id</u>. ¶ 4. The defendant had previously given this phone to the acquaintance and his girlfriend after the girlfriend complained of her phone not working. <u>Id</u>. ¶ 5. The girlfriend did not use the phone, but subsequently loaned it to her sister to use, who discovered the CSAM. <u>Id</u>. The CSAM consists of two videos dated December 7 and 13, 2024, and one image dated December 7, 2024, depicting a prepubescent minor female

engaging in oral sex, vaginal sex, and masturbation with an adult male who has since been identified as the defendant. Id. ¶¶ 6-7.

On January 26, 2026, law enforcement officers interviewed the acquaintance, his girlfriend, and the girlfriend's sister. Id. The acquaintance and his girlfriend, who have known the defendant for several years, confirmed that the female child depicted in the CSAM videos ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Id. ¶ 8.[1] At the time of the creation of the CSAM, the victim was approximately two years old. The acquaintance and his girlfriend also noted that the male voice in the CSAM videos resembles the defendant's voice. Id.

Law enforcement officers also interviewed the mother of the victim. Id. ¶ 9. She confirmed the victim's identity and that the voice in the videos resembles the defendant's voice.[2] Id. She also provided 39 recent photographs and one recent video of the interior of defendant's home, allowing law enforcement officers to confirm that the CSAM videos were likely filmed in the defendant's bedroom. Id. ¶ 10. Law enforcement officers also reviewed the defendant's public social media profiles and recognized distinctive tattoos on the defendant's hands that match tattoos on the adult male's hands in one of the CSAM videos.

On February 9, 2026, a grand jury indicted the defendant on charges of sexual exploitation of a child, in violation of 18 U.S.C § 2251(a), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). The defendant was arraigned before Your Honor on February 11, 2026, and pleaded not guilty to both counts. He did not present a bail package at that time but reserved the right to make a bail application in writing.

II.   Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon determining that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A rebuttable presumption of dangerousness and risk of flight arises where, as here, a defendant is charged with a violation of 18 U.S.C. § 2251 (sexual exploitation of children). 18 U.S.C. § 3142(e)(3)(E). This means that the Court must presume there is "no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of any other person and the community." Id.

To rebut this statutory presumption, the defendant must come "forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). If the defendant satisfies this burden of production, the government must meet the burden of persuasion by clear and convincing evidence that the

---

[1] The complaint identifies the minor victim as Minor Victim #1. Because this letter identifies a minor victim, the government will move to seal a portion of this letter, filing a redacted version publicly on the docket.

[2] The minor victim's mother declined to watch the videos of the CSAM but listened to the audio.

defendant presents a danger to the community and/or by a preponderance of evidence that the defendant presents a risk of flight. Id. The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Four factors guide the Court's determination of whether the presumptions of dangerousness and flight are rebutted:

> (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a . . . firearm . . .";
>
> (2) "the weight of the evidence against the person";
>
> (3) "the history and characteristics of the person, including . . . the person's character, . . . past conduct, . . . [and] criminal history, and record concerning appearance at court proceedings"; and
>
> (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."

18 U.S.C. § 3142(g). In weighing the evidence presented, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court."[3] Mercedes, 254 F.3d at 436.

### III. The Court Should Deny the Defendant's Motion for Bail

Each of the above factors weighs heavily in favor of a determination that the defendant is both a danger to the community and a risk of flight.

#### A. The Defendant Poses a Danger to the Community

First, the nature and circumstances of the charged crimes strongly support detention. The defendant is charged with incredibly serious offenses: the sexual exploitation of children and the possession of child pornography. Worse yet, ███████████████████████████████████████████████████████████████████████████, who at the time of the offense was

---

[3] Evidentiary rules do not apply at detention hearings, and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination; most proceed on proffers. Id. at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or even for discovery." Id. (internal quotation marks omitted). Indeed, the Second Circuit has reversed district courts where they have not credited the government's proffer, including proffers with respect to a defendant's dangerousness. See, e.g., Mercedes, 254 F.3d at 437.

3

approximately two years old. This was not an isolated event: the recovered phone contained three CSAM files from two distinct dates: December 7, 2024, and December 13, 2024. But it is likely that the offense conduct stretches beyond that. The defendant can be heard on the December 7, 2024, CSAM video making statements such as, "you're getting good at this" and "you're good at that now." These statements strongly imply that exploitive conduct occurred beyond what the government currently knows. Child exploitation crimes like these often encompass predatory behavior over a period of months or years, sophisticated methods of grooming or concealment, and a willingness to target those least able to protect themselves. It is this danger that explains why a presumption of detention exists in these cases. As then-District Judge Joseph Bianco opined:

> The reason for this presumption is clear. "No one questions that child pornography is an insidious offense since it takes advantage of a particularly vulnerable segment of society, children." United States v. Schenberger, 498 F.Supp.2d 738, 742 (D.N.J. 2007) (citing United States v. MacEwan, 445 F.3d 237, 250 (3d Cir. 2006)).

United States v. Valerio, 9 F. Supp. 3d 283, 289 (E.D.N.Y. 2014). And this case is far worse than a garden-variety child pornography offense, given the identity and age of the victim and the other factors described above.

      Second, the evidence in this case is strong, even at this preliminary stage. The government's evidence consists of, among other things, (i) the phone containing the CSAM which has messages indicating that it once belonged to the Defendant; (ii) the testimony of the defendant's acquaintance and his girlfriend, as well as the minor victim's mother who all can testify to the identity of the minor victim and the defendant's voice in the videos; (iii) photos and a video of the interior of the defendant's house, some of which match the background of the CSAM videos; (iv) public social media pictures of the defendant in which distinct tattoos are visible that match those seen in the CSAM videos; and (v) judicially-authorized search warrant returns of the defendant's residence in which a tablet containing additional CSAM was seized.[4]

      The defendant has demonstrated a deliberate willingness to target vulnerable children to commit irrevocable harm. Returning him to his Staten Island residence, ███████████ ████████████████████████, presents a heightened danger to the community. It bears noting that defendant's current wife has children of her own that defendant might have access to, though she does not have custody of them. The nature of the charged conduct places this case squarely within the set of offenses for which pretrial detention is not merely permitted but strongly favored.

---

[4] The review of the tablet is ongoing but at this stage the government believes that this CSAM was downloaded from the internet and not produced by the defendant.

B.  <u>The Defendant Poses a Risk of Flight</u>

The defendant also poses a significant risk of flight if released. One of the offenses with which the defendant is charged, producing child pornography, carries a statutory mandatory minimum of fifteen years' imprisonment and a statutory maximum of 30 years. 18 U.S.C. §§ 2251(a), 2251(e). The Second Circuit has held that the possibility of a severe sentence is an important factor in assessing flight risk. <u>See</u> <u>United States v. Jackson</u>, 823 F.2d 4, 7 (2d Cir. 1987); <u>United States v. Cisneros</u>, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); <u>United States v. Townsend</u>, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight."). The government's investigation has also revealed that the defendant has a history of alcohol and substance abuse, exacerbating this risk.

The defendant's bail package and the conditions suggested by the defense are insufficient to mitigate this risk of flight. The proposed use of home detention and electronic monitoring in lieu of detention is insufficient here, and "at best elaborately replicate[s] a detention facility without the confidence of security such a facility instills." <u>United States v. Orena</u>, 986 F.2d 628, 632 (2d Cir. 1993); <u>see</u> <u>United States v. Zarrab</u>, 2016 WL 3681423, at *10 (S.D.N.Y. June 16, 2016).[5]

---

[5] Recent history in this district bears this out, with numerous defendants fleeing or otherwise attempting to thwart electronic monitoring after being released on conditions. <u>See</u> <u>United States v. Edna Ardales Franco</u>, 23-CR-394 (DG) (in July 2025 defendant absconded, failing to appear for two court appearances in advance of trial); <u>United States v. Reynaldo Neseosupe</u>, 19-CR-424 (FB) (in June 2025 defendant convicted at trial of receiving child pornography cut his location monitoring device and fled the day he was scheduled to begin serving his sentence); <u>United States v. Roberto Cruz-Rodriguez</u>, 23-CR-224 (JS) (in May 2025 defendant charged with illegal reentry by a convicted felon cut his electronic monitoring device, left it on his front lawn and absconded); <u>United States v. Stanley Elianor</u>, 16-CR-288 (AMD) (in March 2025 defendant fled after being arraigned on a violation of supervised release for attacking a witness who had previously testified against him in a state murder trial); <u>United States v. Guanghua Shen</u>, 25-CR-48 (HG) (in January 2025 defendant cut her electronic monitoring device at JFK Airport the day before she was required to surrender to the Bureau of Prisons); <u>United States v. Svetlana Dali</u>, 24-MJ-645 (JAM) (in December 2024 defendant cut her location monitoring device while on pretrial release and absconded to Canada, where she was apprehended at the border); <u>United States v. Horst Jicha</u>, 23-CR-342 (OEM) (in October 2024 defendant charged with securities fraud and associated crimes cut his location monitoring device while on pretrial release and absconded days before he was supposed to appear for a status conference); <u>United States v. Tony Clanton</u>, 23-CR-328 (KAM) (in March 2024 defendant fled after cutting his location monitoring device on the eve of trial); <u>United States v. Georges Barker</u>, 23-MJ-27 (SIL) (defendant in an extradition proceeding tampered with his location monitoring bracelet on two occasions before he was remanded in December 2023).

C.  Defendant's Citations are Inapposite

The defendant concludes his application by citing a series of prior cases where defendants received pretrial release. But the vast majority of the cited cases are easily distinguishable: they involved defendants producing CSAM by way of contacting victims on the internet. See e.g., United States v. Noel, No. 23-CR-320 (PKC); United States v. Cruz, No. 23-CR-159 (NRM); United States v. Deutsch, No. 18-CR-502 (FB); United States v. Labianca, No. 22-CR-206 (AMD); United States v. Garrett, No. 20-CR-561 (RPK); United States v. Didier, No. 20-CR-423 (JMA). Only one case, United States v. Leung, No. 20-CR-181 (HG) involved hands-on child exploitation, but the defendant received bail after being charged in a criminal complaint only with possession of child pornography, and not sexual exploitation of a minor. See ECF No. 1, United States v. Leung, No. 22-MJ-217. And while the government did unsuccessfully move to detain Leung after indicting him with sexual exploitation of a minor, the conduct still did not rise to the level of severity present here. See ECF No. 12, United States v. Leung, No. 22-CR-181 (HG).

In fact, in cases such as these where a defendant is charged with hands-on abuse of a minor, case law firmly favors detention. See e.g., United States v. Terranova, No. 23-516 (KAM); United States v. Burgos-Collazo, No. 20-CR-492 (PKC); Valerio, 9 F. Supp. 3d at 292.

IV.  Conclusion

For the reasons set forth above, the Court should deny the defendant's motion for bail, and the defendant should remain detained pending trial.

V.  Request for Sealing

Because this letter tends to identify a particular minor victim, the government respectfully requests that it be filed under seal. See United States v. Amodeo, 71 F.3d 1044, 1050-52 (2d Cir. 1995) (privacy interests of third parties may be compelling reason to justify sealing). The government is sensitive to the need to minimize the amount of information in a criminal case that is filed under seal, see United States v. Aref, 533 F.3d 72, 83 (2d Cir. 2008), and will file a copy of this letter on the public docket with the portions identifying the minor victim redacted.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:   /s/ Brandon G. Davis
Brandon G. Davis
Assistant U.S. Attorney
(718) 254-6106